AUGUSTA CALVER, Respondent, *v.* CHARLES E. CROWELL, Appellant.

First Department, December 19, 1924.

**Motor vehicles — action for injuries suffered when defendant's automobile struck plaintiff — automobile was in charge of chauffeur — chauffeur and his wife testified that automobile was taken after chauffeur's work was completed for day without consent of owner and was being used by chauffeur for personal business — verdict in favor of plaintiff against evidence.**

In an action to recover damages for injuries suffered by the plaintiff when she was struck by defendant's automobile while she was crossing a street in New York city the verdict of the jury in favor of the plaintiff is against the weight of the evidence, since it appears that the chauffeur, who was not in the employ of the defendant at the time of the trial, and the chauffeur's wife both testified that after the chauffeur had completed his day's work, the automobile was placed in the garage; that the chauffeur wishing to use the automobile to take his wife to see her physician endeavored to reach the defendant by telephone to procure his consent for the use of the car but could not do so; that notwithstanding the owner's consent could not be obtained for the use of the automobile the chauffeur

took it from the garage at about eight P. M., and while on his way with his wife to see his wife's doctor the accident happened; and that the chauffeur did not have general permission to use the automobile for his own purposes; and since it further appears that the testimony of the chauffeur and his wife is supported by the testimony of the defendant and other members of his family to the effect that the chauffeur did not have permission to use the automobile on the occasion in question.

The testimony of a witness for the plaintiff, a process server in the employ of plaintiff's attorney, that when he served the summons on the defendant the defendant told him in effect that he expected the chauffeur to report to him on the evening of the accident, is unreasonable and not entitled to weight, since the witness admitted that at the time he served the summons he had no knowledge of the facts attending the accident and, therefore, his testimony does not overcome the positive and uncontradicted testimony of the chauffeur and the chauffeur's wife that the automobile was being used at the time of the accident in the personal business of the chauffeur without the consent of the defendant.

APPEAL by the defendant, Charles E. Crowell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of December, 1923, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 12th day of December, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Bertrand L. Pettigrew,* for the appellant.

*Julian S. Eaton* [*Martin B. Faris* of counsel], for the respondent.

MERRELL, J.:

The answer of the defendant herein admitted the employment of the chauffeur who drove the car at the time of the accident by the defendant, but denied that at the time defendant's chauffeur was upon the defendant's business, and denied that the car was under the defendant's control at the time plaintiff received her injuries, but it is alleged that the automobile was at the time being used by the chauffeur upon his own personal affairs without the knowledge or consent of the defendant.*

The accident occurred on July 17, 1920, at about eight o'clock in the evening. It was still daylight. The plaintiff, a lady, fifty-one years of age, was crossing One Hundred and Twenty-fifth street from the north to the south at the easterly crosswalk of Morningside avenue when she was struck by the defendant's automobile driven by defendant's chauffeur, one Otto Miller, the plaintiff sustaining a fracture of her leg and other injuries, for which a recovery has been had against the defendant. The testimony presented a question of fact as to the negligence of

---

* See Highway Law, § 282-e, as since added by Laws of 1924, chap. 534.— [REP.

the chauffeur in driving the car and as to plaintiff's freedom from contributory negligence. These questions were resolved by the jury in plaintiff's favor and the verdict of the jury upon the question of negligence of the defendant's chauffeur and of plaintiff's freedom from contributory negligence is conclusive upon the defendant. No claim is made that the verdict of the jury is excessive.

At the time of the accident the only occupants of the car were defendant's chauffeur, Miller, and the latter's wife, Anna Miller, both of whom were sitting on the front seat of defendant's automobile, which was a Cadillac sedan.

The defendant was a retired lawyer of the age of about seventy-three years at the time of the accident and in feeble health. He resided in the Apthorp Apartments at No. 2211 Broadway, between Seventy-eighth and Seventy-ninth streets, in the borough of Manhattan. Defendant had been confined in St. Luke's Hospital for seven weeks where he underwent an operation and had only returned to his apartment at the Apthorp about two weeks prior to the accident to plaintiff. Defendant's family consisted of his daughter, a Mrs. Emmett, and her husband, and, at the time plaintiff received her injuries, a male nurse was in defendant's apartment attending him. Defendant's car was kept at the Capitol Garage, at Broadway and One Hundred and Twenty-sixth street. It was the custom of the defendant to ride out in his car daily for a few hours, and on the afternoon of the day of the accident the defendant had been for an automobile ride in company with his nurse, one Mesler, and his daughter and son-in-law. The car had been driven by defendant's chauffeur, Miller, and after the ride the defendant and his daughter, son-in-law and nurse left the car at the Apthorp Apartments at about five o'clock in the afternoon. There was some slight discrepancy between the defendant, his nurse, his daughter and son-in-law, and the chauffeur, Miller, as to just what instructions the latter received upon leaving his employer, the defendant, at his apartment that afternoon. Miller, the chauffeur, testified that he was told at that time to be at the Capitol Garage at about ten o'clock on the following morning, a Sunday, as usual, and that it was his custom to go to the garage at that time for orders. Defendant's daughter and son-in-law both testified that the defendant told Miller to take the car back to the garage and be down at the Apthorp Apartments the next morning at ten o'clock. The nurse did not remember hearing any instructions given to the chauffeur. The defendant, who, owing to feebleness, was unable to attend the trial, but whose deposition was taken before trial, testified that he gave his chauffeur no instructions on the occasion of his leaving him at his apartment

First Department, December, 1924. [Vol. 211

on the afternoon of the day of the accident, but that it was the chauffeur's duty to take the car to the garage and leave it there, and that the chauffeur had not asked permission to use the car on that night or at any other time, and that the car was taken out by the chauffeur without the permission of the defendant. The chauffeur testified that at the time of the trial he was not in the employ of the defendant, but was employed as a chauffeur by the Yellow Taxicab Company. He was discharged by the defendant following the accident. He testified that after leaving the defendant, his daughter, son-in-law and male nurse at the Apthorp Apartments about five o'clock, he took the car back to the garage at One Hundred and Twenty-sixth street and Broadway, and then went to his home at 466 West One Hundred and Thirty-first street and had his supper; that the only instruction which he received from the defendant or any of the family was to be at the garage around ten o'clock the next day as usual, and that when he had deposited the car in the garage after leaving the defendant at his apartment that Saturday afternoon he was through with his work for the day. The chauffeur testified that his wife had been in poor health and in the hospital and had been home from the hospital but a few days, and that when he reached home after leaving the automobile at the garage his wife complained of illness and after he had eaten his supper he decided to call up the defendant by telephone and ask permission to use the car to take his wife to a Dr. Commodore at Thirty-eighth street and Lexington avenue, who was treating his wife; that he went to a nearby drug store at One Hundred and Thirty-first street and Amsterdam avenue and called up the defendant's apartment on the telephone and was answered by one of the servant girls in the defendant's home; that defendant's nurse was put upon the 'phone, and the chauffeur told the nurse that he wanted to speak to the defendant. This the nurse refused to permit him to do, stating that the defendant was asleep and could not be disturbed, and thereupon hung up the receiver. The chauffeur then testified he went back home and told his wife what had happened and that he then went to the garage and took the car without the defendant's permission and drove it to One Hundred and Twenty-fifth street and Amsterdam avenue, where his wife entered the car and that he then proceeded from that point along One Hundred and Twenty-fifth street to the corner of Morningside avenue and One Hundred and Twenty-fifth street, where the accident occurred. The chauffeur testified that at the time of the accident he was on his way to the office of his wife's physician for the purpose of an examination of his wife, and that he had no errand or commission

of any kind from the defendant or his family to execute that night; that he had no intention of first going to the defendant's home to get permission to use the car. The chauffeur's testimony is corroborated in all essential particulars by that of his wife, who was seated beside him in the automobile at the time plaintiff received her injuries.

To rebut this testimony of the defendant as to the car not being under his control at the time of the accident, and to show that the same was being used by the chauffeur on the latter's business at the time the plaintiff received her injuries, the plaintiff called one Galla, who had been in the employ of plaintiff's attorney as an investigator and process server for a period of three years. Galla testified that he served the summons in the action upon the defendant at the latter's apartment on December 20, 1920, and that at that time he had a conversation with the defendant and told the defendant that the summons was for an accident that happened to Mrs. Calver (plaintiff) and asked the defendant if he knew about it, and that the defendant replied in the affirmative, and stated that he expected the summons. Galla testified that he then asked the defendant if he saw his chauffeur that night, and that the defendant replied that he was expecting his chauffeur to come to the hotel, coming there for orders. On cross-examination Galla testified that after giving the summons to the defendant he asked him where his chauffeur was going the night of the accident, or if he saw his chauffeur, and that the defendant replied, " Well, I expected my chauffuer to come here that night; going to give him orders, or come here to get orders." Galla testified that he asked him both where his chauffeur was going and if he saw his chauffeur that night — both questions. On further cross-examination Galla testified that a Mr. Dolan in the office of the plaintiff's attorney was handling the case, and that he, Galla, was not told anything about the accident; that he was just told who was hurt, where the plaintiff lived, and that he went to see her and served the summons. Galla disclaimed any knowledge at the time that he served the summons that there was any question of control in the case and that only the chauffeur and his wife were in the car at the time, and denied knowledge that the defendant himself was not in the car at the time of the accident. The testimony of Galla does not ring true. It is very strange that he was asking the defendant if he had seen his chauffeur that night if he was ignorant as to whether the defendant himself was in the car at the time of the accident. It is quite suspicious that a process server who professed ignorance as to the facts of the case or as to whether the defendant was in the car at the time of the accident

should have questioned the defendant about the crucial point in the case, namely, whether the car at the time was under the control of the defendant, who, as far as the witness knew, was in the car when the accident happened. The story of the process server is an unreasonable one. It is not likely that that chauffeur, who had shortly before left his employer at his apartment, would take the car out of the garage and drive two and one-half miles to his employer's home to obtain instructions for the following day from his employer, who was sick, and in bed and asleep at the time. Had it been necessary to obtain these instructions, he could easily have telephoned to his employer with reference thereto, or he could have, as usual, gone to the garage on the following morning and there received the necessary instructions.

But assuming the truth of the testimony of Galla, I do not think it overcame the positive and uncontradicted testimony of Miller and his wife that at the precise time of the accident to plaintiff Miller was using the car for the convenience of his wife and himself in taking the wife to visit her physician at Thirty-eighth street. Not only was the testimony of Galla overcome by the weight of the evidence and circumstances to the contrary, but even if true did not disprove that the automobile at the time of the accident was under the control of the chauffeur and was being used in his business without the permission of the defendant. So far as the record discloses, the chauffeur may be said to have been a disinterested witness. He was not at the time of the trial in the employ of the defendant and was in reality testifying against his own interest. (*Der Ohannessian* v. *Elliott*, 233 N. Y. 326.) The chauffeur's wife was still less interested than was her husband, and her testimony, uncontradicted, conclusively proved that defendant's automobile was being used by her husband and herself at the time in their own affairs without the knowledge or consent of the defendant.

The accident occurred at the corner of Morningside avenue and One Hundred and Twenty-fifth street, and that fact is corroborative of the testimony of the chauffeur and his wife that they were proceeding from their residence to visit her physician at Lexington avenue and Thirty-eighth street at the time the accident occurred. The accident occurred at a point which was not in the direct route between the garage and the Apthorp Apartments where the defendant resided. The automobile at the time was taking a course away from the apartment to which the plaintiff would have the court infer it was bound at the time plaintiff was struck. The fact of the presence of the chauffeur's wife in the car with him at the time is a circumstance corroborating their testimony.

I am of the opinion that the judgment and order appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.